[Cite as *State v. Eathridge*, 2016-Ohio-3322.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103391

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HAROLD EATHRIDGE

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-594428-A

**BEFORE:** E.T. Gallagher, P.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** June 9, 2016

**ATTORNEY FOR APPELLANT**

Stephanie L. Lingle
1360 East 9th Street
Suite 910
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    David Schwark
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Harold Eathridge ("Eathridge"), appeals his felonious assault conviction. He raises two assignments of error:

1. The trial court erred by permitting the trial to continue after it was discovered that the state neglected to turn over a substantial amount of evidence to the defense.

2. Appellant was deprived of effective assistance of counsel when defense counsel failed to object to the state's failure to disclose potentially exculpatory evidence.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} Eathridge was charged with two counts of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), and one count of aggravated menacing in violation of R.C. 2903.21(A)(2). One count of felonious assault was based on Eathridge's alleged use of a deadly weapon, and the second count was based on serious physical harm allegedly caused to the victim. The following facts were presented at a bench trial.

{¶4} One afternoon in March 2015, Terri Hall ("Hall") went to Chillie's Beverage and Deli store located at 2976 East 116th Street in Cleveland, with her cousin, his fiancée, and a friend, to buy food and beverages. Hall completed her purchase first, exited the store, and sat in the car while waiting for the others. While she was sitting in

the car, Eathridge, who was walking to the door, looked at Hall with an angry expression on his face. Meanwhile, Hall's brother, Lamonte Hardrick ("Hardrick"), was pulling into the parking lot. Hall testified that Eathridge and Hardrick both have children with the same woman, and there had been hostility between them for the last year or two.

{¶5} A surveillance video, which was admitted into evidence, shows Eathridge exiting the store. As he is walking to his car, someone off screen, later identified as Hardrick, says something to him and an argument ensues. Hall heard one of the men say, "Let's shoot the fair one," which Hall explained means, "Let's fight." Hardrick is seen walking toward Eathridge, tucking his shirt or something into his pants. Hardrick briefly disappears from view but reappears a moment later taking off his shirt in preparation for a fight. Both men put up their arms to fight but neither one hits the other.

{¶6} Hall testified, and the video shows, that Hall intervenes in an attempt to stop the fight. A moment later, Eathridge gets into his car and reverses out of his parking spot as if to drive away. However, instead of turning toward the exit, Eathridge is seen driving directly into Hall and Hardrick. The front of Eathridge's car hits Hall and knocks her to the ground before leaving the scene.

{¶7} Detective Michael Hale ("Det. Hale"), of the Cleveland Police Department, testified that he interviewed the witnesses, including Eathridge, and recorded their statements. Eathridge's recorded statement was admitted into evidence. According to the recording and Det. Hale's testimony, Eathridge denied purposely hitting Hall and claimed he was attempting to leave the parking lot but Hall, Hardrick, and others

surrounded his vehicle and attacked him. Det. Hale testified that Eathridge voluntarily came to the police department to make a report of the incident.

{¶8} Prior to trial, defense counsel filed a demand for discovery and a bill of particulars. The state responded to discovery and provided the initial police report, Eathridge's criminal record, and two sets of photographs. The state later supplemented the discovery and produced Eathridge's recorded statement, Hall's victim statement, the surveillance video, and disclosure of the Hall's medical records. However, during Det. Hale's testimony, it was revealed that a six-page police report that contained the detective's "follow up report" was not produced in discovery. That report included transcripts of 911 calls that were made following the incident.

{¶9} Det. Hale's testimony also revealed there were recorded statements of two other eyewitnesses that were not produced in discovery. The prosecutor advised the court that he did not have these recorded statements because the police never provided them. The court and the state afforded defense counsel an opportunity to review the undisclosed items. After reviewing the police report, counsel waived defendant's right to review the recorded statements, reasoning that they were hearsay.

{¶10} The state and defense counsel agreed, based on Hall's medical records, that she did not sustain serious physical harm, and the state dismissed the felonious assault charge that required proof of serious injury. Following closing arguments, the court found Eathridge guilty of felonious assault with a deadly weapon and aggravated

menacing. The court sentenced Eathridge to an aggregate three-year prison term and three years of postrelease control. Eathridge now appeals his convictions.

## II. Law and Analysis

### A. Undisclosed Evidence

{¶11} In the first assignment of error, Eathridge argues the trial court erred in proceeding with the trial after learning that the state failed to disclose relevant evidence to defense counsel prior to trial. Eathridge contends the state's failure to produce this evidence violated his right to due process.

{¶12} In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* at 87. Thus, to establish a violation under *Brady*, the appellant must establish that (1) the prosecution failed to disclose the evidence upon request, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Moore v. Illinois*, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

{¶13} Evidence is material if there is a reasonable probability that the result of the proceeding would have been different if the prosecution had disclosed the evidence to the defense. *State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 66. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the

syllabus. The *Brady* requirements apply to exculpatory evidence as well as to evidence used to impeach a witness's credibility. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶14} In *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the United States Supreme Court held that the state's duty to disclose evidence extends to information in the possession of the prosecutor's office or in the possession of the law enforcement agency investigating the offense, even if it was never disclosed or turned over to the prosecutor. However, "[e]ven where information may be exculpatory, 'no due process' violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937 (2001). The defendant bears the burden of proving a *Brady* violation occurred that rises to the level of a due process violation. *Id*. at paragraph two of the syllabus.

{¶15} Eathridge argues the state's failure to produce two recorded witness statements and a six-page police report constituted a *Brady* violation that violated his right to due process. However, the record shows the parties discovered these items had not been disclosed during the state's case-in-chief. The court stopped the trial to allow the officer to retrieve the evidence from the police department. Once the evidence was obtained, defense counsel reviewed it, and made the following statement on the record regarding the police report:

> ATTORNEY: It's a six-page document which contains some of the, what the officer did in this case, the detective. It also has some 911 calls that I hadn't seen before, transcripts, and some other work of the first officer on the scene. Is that accurate what this report contains?

DET. HALE: That's correct.

ATTORNEY: Judge, I would say for the record I have had the opportunity to review it, and I thank the Court for the indulgence of allowing the officer to go get it.

(Tr. 100.)

**{¶16}** Defense counsel was aware of the two undisclosed recorded statements before calling witnesses in his case-in-chief.   He could have reviewed the recordings, but he chose not to do so.   That these recordings might have contained impeachment evidence is not only speculative, but highly unlikely based on Det. Hale's testimony that the witnesses' statements were consistent with Hall's statement, which was consistent with the video recording of the event.   (Tr. 111.)   Therefore, we find no due process violation as a result of the state's untimely disclosure of the police report and the two recorded statements.

**{¶17}** The first assignment of error is overruled.

## II.   Ineffective Assistance of Counsel

**{¶18}** In the second assignment of error, Eathridge argues his Sixth Amendment right to the effective assistance of counsel was violated because his trial counsel failed to object to the state's failure to disclose potentially exculpatory evidence.

**{¶19}** To establish a claim for ineffective assistance of counsel, Eathridge must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.   *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).   To

establish the prejudice, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

{¶20} Counsel's decision not to object to the state's failure to disclose the follow-up police report and the two recorded witness statements did not constitute ineffective assistance of counsel. As previously stated, the court stopped the trial to allow the evidence to be produced, and to give defense counsel an opportunity to review the evidence before the defendant's case-in-chief. The six-page police report did not contain any exculpatory evidence. And counsel's decision not to review the recorded statements was not ineffective since Det. Hale testified that the statements were consistent with the victim's statement.

{¶21} Moreover, the video of the incident clearly shows Eathridge driving his vehicle in the victim's direction, which was the opposite direction he would have gone if he intended to exit the parking lot. Therefore, even if counsel had objected to the failure to disclose material evidence, the outcome of the trial would not have been different.

{¶22} Therefore, the second assignment of error is overruled.

{¶23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, PRESIDING JUDGE

MELODY J. STEWART, J., and
MARY J. BOYLE, J., CONCUR